UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

AGAN JUSIC,                            )
                                       )
          Plaintiff,                   )
                                       )
                                       )
vs.                                    )   Case No. 4:19-CV-003306-SEP
                                       )
ANDREW M. SAUL,                        )
                                       )
                                       )
          Defendant.                   )

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. §§ 405(g) for judicial review of the final decision of
Defendant Andrew M. Saul, the Commissioner of Social Security, denying the application of
Plaintiff Agan Jusic for Disability Insurance Benefits (DIB) under Title II of the Social Security
Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income (SSI) under Title XVI of
the Social Security Act, 42 U.S.C. §§ 1381, *et seq.*  Because there is substantial evidence to
support the decision denying benefits, the Court will affirm the Commissioner's denial of
Plaintiff's application.

I.    **BACKGROUND**

On October 13, 2016, Plaintiff applied for DIB and SSI, alleging that he had been unable
to work due to disability since July 23, 2015.  (Tr. 160-72).  He alleged disability based on
diabetes mellitus, high cholesterol, depression, anxiety, irregular heartbeat, ischemic heart
disease, and hypertension.  (Tr. 272).  His applications were initially denied on March 6, 2017.
(Tr. 78-88).  Plaintiff subsequently filed a Request for Hearing by Administrative Law Judge
(ALJ).  (Tr. 96-100).

Plaintiff, who was represented by counsel, testified at his hearing that he is unable to
work due to his heart condition.  (Tr. 45).  He further testified that he is "always tired" and he
has to "sit all the time."  (Tr. 46).  He testified that he does nothing but lie down, and that during

the day he gets up only to use the restroom.  (Tr. 47, 49).  He also testified that it was difficult to walk; when the ALJ asked him how far he could walk, he stated that he could walk around 100 meters.  (Tr. 48).  In his Adult Function Report, Plaintiff states that on a typical day he does nothing other than wake up, take his medications, lie back down, watch television, and go back to sleep.  (Tr. 292).  He states that he requires assistance from others in order to use the toilet, bathe, shave, get dressed, and feed himself, and that his son and daughter-in-law provide such assistance.  *Id*.  He further states that he does not cook because of back problems, and that his back hurts if he stands for long.  (Tr. 293).  He indicates that he does not do any chores in his house or yard, again attributing his inability to do so to back problems.  (Tr. 293-94).  He states that he does not drive, only leaves the house for doctor's appointments, and never goes out alone. (Tr. 294-95).

In a Third-Party Function Report completed by Plaintiff's daughter-in-law, she reports that she helps him every day due to his depression, anxiety, back problems, and short-term memory difficulties.[1]  (Tr. 258).  She indicates that she helps him with all aspects of personal care, including bathing, dressing, and feeding him, but that her husband, Plaintiff's son, helps him with "guy stuff."  (Tr. 259).  She states that Plaintiff cannot drive and only leaves the house to go to doctor's appointments and to sit outside. (Tr. 261).

In an opinion issued on May 15, 2019, the ALJ found Plaintiff was not under a "disability" as defined in the Act.  (Tr. 11-25).  Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's (SSA) Appeals Council.  (Tr. 157-59).  On October 24, 2019, the SSA's Appeals Council denied his Request for Review.  (Tr. 1-4). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

As to Plaintiff's testimony, work history, and medical records, the Court accepts the facts as provided by the parties.  The Court will address specific facts related to the issues raised by the parties as needed in the discussion below.

---

[1]  The Court notes that although Plaintiff and his daughter-in-law repeatedly emphasize that back problems hinder Plaintiff's ability to participate in daily activities, including self-care, household chores, etc., Plaintiff did not assert disability based on a back condition in his application for benefits (Tr. 250), and there is no evidence in the record of any diagnosis of an impairment of the back, nor is there any evidence of treatment for any back disorder.

## II.    STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992).  The Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010).  The impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work."  42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process.  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a); [2] *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process).  At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then he is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(i); *McCoy*, 648 F.3d at 611.  At Step Two, the Commissioner determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, he is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c); *McCoy*, 648 F.3d at 611.  At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings").  20 C.F.R. §§ 404.1520(a)(4)(iii); *McCoy*, 648 F.3d at 611.  If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process.  20 C.F.R. §§ 404.1520(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner must assess the claimant's "residual functional capacity" (RFC), which is "the most a claimant can do despite [his or her] limitations."  *Moore v.*

---

[2]  All references throughout this opinion are to the version of the regulations that was in effect as of the date of the ALJ's decision.

*Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. §§ 404.1520(e). At Step Four, the Commissioner determines whether the claimant can return to his past relevant work by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his past relevant work, he is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.* At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if he cannot make such an adjustment, he will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012).

## III.   THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date, April 1, 2016; that Plaintiff has the severe impairments of diabetes mellitus, hypertension, ischemic heart disease, left posterior cerebral artery distribution subacute infarct, and an adjustment disorder with depressed mood/major depressive disorder; and that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 13-14). The ALJ found that Plaintiff has the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a), except that he can never climb ladders, ropes, or scaffolds; he can only occasionally climb ramps and stairs or balance, kneel, stoop, crouch, and crawl; he should avoid concentrated exposure to wetness, humidity, vibration, pulmonary irritants, extreme heat and cold; he should avoid all exposure to workplace hazards such as moving machinery and unprotected heights; and he is limited to simple, routine, repetitive tasks. (Tr. 17).

The ALJ found that Plaintiff is unable to perform any of his past relevant work. (Tr. 23). But considering Plaintiff's age, education, and work experience, and in reliance on the testimony

4

of a vocational expert (VE), the ALJ found that Plaintiff would be able to perform occupations including product inspector (Dictionary of Occupational Titles (DOT) No. 669.687-014, sedentary exertion level, 11,000 jobs in the national economy), assembler (DOT No. 706.684-030, sedentary exertion level, 34,000 jobs in the national economy); and production worker (DOT No. 734.687-018, sedentary exertion level, 45,000 jobs in the national economy). (Tr. 24). The ALJ concluded that Plaintiff had not been under a disability, as defined in the Act, from the alleged onset date through May 15, 2019, the date of the decision. (Tr. 24-25).

**IV.   STANDARD FOR JUDICIAL REVIEW**

This Court must affirm the Commissioner's decision if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942. *See also Biestek*, 139 S. Ct. at 1154 ("Substantial evidence . . . means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consolidated Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the Court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the Court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

## V.    DISCUSSION

Plaintiff challenges the ALJ's decision on three grounds: (1) the ALJ reached a flawed RFC because it was based on his own interpretation of the raw medical evidence in the record; (2) the ALJ failed to develop the record by obtaining more information from Plaintiff's cardiologist in order to clarify illegible treatment notes; and (3) the ALJ did not properly weigh the opinion of Plaintiff's treating cardiologist.  In response, the Commissioner maintains that the ALJ properly evaluated the medical opinions of record and based his decision on substantial evidence in the record as a whole.

### A.  RFC Evaluation

A claimant's RFC is "the most a claimant can do despite his limitations."  *Moore*, 572 F.3d at 523 (citing 20 C.F.R. § 404.1545(a)(1)).  It is the ALJ's responsibility to determine a claimant's RFC "based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'"  *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)).  "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace."  *Steed v. Astrue*, 524 F.3d 872, 875 (8th Cir. 2008) (quoting *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007)).  "The interpretation of physicians' findings is a factual matter left to the ALJ's authority." *Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016).  "However, the ALJ cannot 'play doctor,' meaning that the ALJ cannot draw improper inferences from the record or substitute a doctor's opinion for his own."  *Adamczyk v. Saul*, 817 Fed. App'x. 287, 289-90 (8th Cir. 2020) (unpublished).  Nevertheless, "[e]ven though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner."  *Cox v. Astrue*, 495 F.3d 614, 619-20 (8th Cir. 2007).

In this case, the ALJ reviewed Plaintiff's testimony and medical records, examined the consistency of his subjective complaints with the evidence of record, analyzed each of the medical opinions in the record, and made the following findings:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR §§ 404.1567(a) and 416.967(a) except the claimant can never climb ladders, ropes, or scaffolds.  He can occasionally climb ramps and stairs, balance, kneel, stoop, crouch, and crawl.  He should avoid concentrated exposure to wetness, humidity, vibration, pulmonary irritants, extreme heat and cold, and all exposure to

workplace hazards such as moving machinery and unprotected heights.  He is limited to simple, routine, repetitive tasks.

(Tr. 17).  In reaching his decision, the ALJ considered and gave "partial" weight to the opinion of the state agency medical expert, Dr. Kevin Threlkeld, who reviewed the record and found that while Plaintiff's conditions impacted his ability to perform some activities, he retained the ability to do a range of light work with certain limitations.  (Tr. 22, 67-77).  The ALJ also considered and assigned "partial" weight to Plaintiff's treating cardiologist, Dr. Jawed Siddiqui, finding his opinion to be unsupported by his own treatment notes and the other medical evidence of record, as well as internally inconsistent.  (Tr. 22, 703-05).

Based on a careful review of the record, the Court finds that the ALJ's determination that Plaintiff had the RFC to perform sedentary work with several additional limitations was supported by substantial evidence, including medical evidence, addressing Plaintiff's ability to function in the workplace.  The Court also finds that the ALJ did not impermissibly "play doctor" in making the RFC finding, but properly determined the RFC based on all of the evidence.

First, the Court notes that this is not a case in which the ALJ made an RFC finding in the absence of any opinion evidence, relying solely on his own interpretation of the objective medical evidence; nor is it a case where the ALJ declined to give any weight to any of the opinions in the record.  The record in this case contains two different medical opinions regarding Plaintiff's physical impairments.[3]  The ALJ analyzed each of these opinions in detail and weighed them in his decision, giving "partial" weight to each.  (Tr. 22).

Dr. Siddiqui's opinion is dated October 24, 2018, and consists of answers to a questionnaire, presumably composed by Plaintiff's attorney.  (Tr. 703).  He states that Plaintiff's symptoms include fatigue, shortness of breath, and chest pain, and that Plaintiff's prognosis is poor.  (Tr. 703).  When asked to describe the clinical findings and objective signs that support Plaintiff's limitations, Dr. Siddiqui wrote "myocardial infarction" and "diabetes."  *Id*.  In response to a question asking whether Plaintiff's impairments are reasonably consistent with the symptoms and functional limitations described in his opinion, he checked "No." (Tr. 704).  He

---

[3]  The record also includes multiple opinions regarding Plaintiff's mental impairments. However, as Plaintiff does not challenge the mental RFC, the Court will not address those opinions.

opined that Plaintiff needs to elevate his legs for twenty percent of every 8-hour working day. (Tr. 705).  He further opined that Plaintiff could sit for 30 minutes and stand for 30 minutes at a time, and that he could sit for less than two hours a day, and stand/walk for less than two hours a day.  (Tr. 704).

The ALJ assigned "partial" weight to Dr. Siddiqui's opinion, finding it to be unsupported by his own treatment notes or by the other medical evidence of record, as well as internally inconsistent.  (Tr. 22).

Dr. Threlkeld prepared a physical function opinion, dated March 6, 2017, in which he opined that Plaintiff could perform work at a light exertional level.  (Tr. 67-77).  He further opined that Plaintiff was capable of standing and walking for a total of about six hours in an eight-hour workday and was able to sit for about six hours per day.  (Tr. 73).  He also opined that Plaintiff was capable of occasionally climbing ramps, stairs, ladders, ropes and scaffolds. (Tr. 74).  He recommended that Plaintiff not be exposed to extreme heat or cold, or pulmonary irritants.  *Id*.

The ALJ assigned "partial" weight to Dr. Threlkeld's opinion as well.  (Tr. 22).  The ALJ found the limitations imposed to be supported by the record but determined that "additional medical evidence supports a greater reduction to the light exertional level given [Plaintiff's] cardiac impairments and subsequent stroke."  *Id*.

Plaintiff argues that only Dr. Siddiqui's opinion accounts for limitations caused by medical events subsequent to Dr. Threlkeld's review of his condition, namely the stroke that he experienced in 2018, which was after Dr. Threlkeld's opinion was offered.  Plaintiff contends that the ALJ must have ignored Dr. Siddiqui's opinion when crafting his RFC, as the RFC did not include all additional limitations suggested by Dr. Siddiqui.  Consequently, Plaintiff argues, the ALJ "played doctor" by drawing his own conclusions from the raw medical data regarding what Plaintiff could still do after his stroke, and therefore the RFC is not supported by substantial evidence.

Plaintiff's argument has no merit.  First of all, the RFC is an "administrative assessment," not a medical one, and therefore, "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC."  *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). Accordingly, "there is no requirement that an RFC finding be supported by a specific medical

opinion," or indeed, any medical opinion at all. *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

Furthermore, the ALJ did not ignore Dr. Siddiqui's opinion. He discussed it at length in his decision and assigned it "partial" weight. (Tr. 22.) He did not give it controlling weight, because he determined that the extreme limitations suggested by Dr. Siddiqui were not supported by the record, including Dr. Siddiqui's own treatment notes, and because the opinion was internally inconsistent. It is the ALJ's job to evaluate the entire record and to weigh any opinions in light of all other credible evidence. *See Chaney v. Colvin*, 812 F.3d 676, 679 (8th Cir. 2016). Here, after thorough review of the record, the ALJ crafted an RFC that did not precisely mirror any of the medical opinions in the record, and such determination was within his sound discretion, as "the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians." *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011).

In addition to the opinion evidence in the record, the ALJ's determination that a sedentary RFC with additional limitations adequately accounts for Plaintiff's cardiac impairments is supported by other evidence, including treatment records suggesting that his symptoms were not as severe as he claimed, evidence showing noncompliance with his health care providers' recommendations, and several inconsistencies between Plaintiff's testimony and other evidence of record.

First, the RFC assessment is supported by the ALJ's analysis of Plaintiff's reported symptoms and course of treatment, which suggest that Plaintiff's symptoms were not as severe as he alleged. (Tr. 18-19.) The ALJ reasonably considered the numerous normal or mild objective findings in the record and found they did not fully support Plaintiff's allegations regarding the frequency and intensity of his symptoms. *Id*. *See Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005) (holding that it was proper for the ALJ to consider unremarkable or mild objective medical findings as one factor in assessing a claimant's allegations of disabling pain); *Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008) (upholding RFC finding that was based on largely mild or normal objective findings). While it is undisputed that Plaintiff experienced various negative health events connected to his diabetes and cardiac condition—including one heart attack, which occurred before the alleged date of disability onset, and one stroke, which

9

occurred during the relevant period—the record does not support the conclusion that Plaintiff's symptoms related to those conditions were as disabling as he claimed.

For example, after his myocardial infarction, which caused him to be admitted to the hospital for stent placement between July 23, 2015, and July 25, 2015, the record shows one follow-up visit on August 3, 2015, at the Washington University Heart and Vascular Center.  The treatment notes from that visit state that Plaintiff was "doing very well and [the doctor] expect[s] this will continue." (Tr. 385).  During an examination on January 23, 2016, his chest radiograph was normal, his lungs were clear, his heart rate and rhythm were normal, and he had no pedal edema or calf tenderness.  (Tr. 410, 572).  He did visit the Washington University Heart and Vascular Center in October 2016, claiming some chest pain described as "pinpricks."  (Tr. 459).  But the treatment notes from that visit indicate that his lungs were clear, he had a regular heart rate and rhythm, and he was "healthy-appearing" and "vibrant."  (Tr. 387, 456-60).

The record contains multiple similarly normal or unremarkable objective medical findings, with health care providers at various times throughout the relevant period noting that Plaintiff was not experiencing edema or shortness of breath, had normal 5/5 strength in all extremities, normal heart rate and rhythm with no murmurs, no difficulty walking with a normal gait, and normal range of motion in all extremities.  (Tr. 353, 387, 392, 425, 460, 492, 499, 501, 515, 590, 594, 654-56).  For example, on June 27, 2018, over a year after his stroke, Plaintiff presented to Barnes Jewish Hospital emergency room, complaining of a headache and nasal discharge.  (Tr. 654).  Upon examination, he exhibited no weakness, no difficulties ambulating, no shortage of breath, and no chest pain.  (Tr. 654-55).  He also had normal range of motion and no edema.  (Tr. 656).  Additionally, there is no evidence in the record that Plaintiff had to undergo physical therapy or spend any time in a rehabilitation facility after either his myocardial infarction or his ischemic stroke.  *Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015) (an ALJ may weigh conservative course of treatment as a negative factor in assessing claimant's self-reported symptoms).

Second, the ALJ properly considered Plaintiff's noncompliance with treatment recommendations, which suggests that his symptoms were not as frequent or debilitating as he claimed.  (Tr. 18-19).  Without good reason, failure to follow prescribed treatment is grounds for denying an application for benefits.  *Roth v. Shalala,* 45 F.3d 279, 282 (8th Cir.1995).  The ALJ discussed Plaintiff's history of noncompliance with medical professionals' recommendations,

10

noting how he had been frequently noncompliant with numerous medical sources advising him to stop smoking and to take his medications as directed. (Tr. 18-19, 383, 392, 458, 498, 513).

For example, after Plaintiff had an appointment with treating physician Ronald J. Krone on October 20, 2016, Dr. Krone noted that in the "about a year since we have seen him," he had "been noncompliant with" his medications and he "unfortunately is smoking again." (Tr. 515-16). Dr. Krone "strongly recommended" smoking cessation and medication compliance. *Id*. At another appointment on January 24, 2017**,** Dr. Krone noted that the "key points are [Plaintiff] really does not take care of himself and continues to smoke and run out of medications. . . . I have refilled his meds and hope he will take them." (Tr. 513). Plaintiff's failure to cease smoking or to consistently comply with his medication regimen detracts from his claim that he is unable to engage in substantial gainful employment, and the ALJ properly considered such evidence when crafting the RFC. *See Chaney v. Colvin*, 812 F.3d 672, 677–78 (8th Cir. 2016) (non-compliance with medication is properly considered when denying an application for disability benefits); *Choate v. Barnhart,* 457 F.3d 865, 872 (8th Cir.2006) ("[A]n ALJ may properly consider the claimant's noncompliance with a treating physician's directions, including failing to take prescription medications, seek treatment, and quit smoking."); *Guilliams v. Barnhart,* 393 F.3d 798, 802 (8th Cir.2005) (failure to follow a recommended course of treatment weighs against a claimant's credibility); *Wheeler v. Apfel,* 224 F.3d 891, 895 (8th Cir.1996) (citing *Kisling v. Chater,* 105 F.3d 1255, 1257 (8th Cir.1997) (holding that a failure to follow without good reason a prescribed course of remedial treatment, including cessation of smoking, is grounds for denying an application for benefits).

Additionally, the record shows that when Plaintiff was compliant with his treatment recommendations, his condition improved. *See Lawson v. Colvin*, 807 F.3d 962, 965 (8th Cir. 2015) ("To the extent a claimant's conditions are stable and controlled by medications or other treatment, those impairments are not considered disabling."). For example, after his myocardial infarction, at a follow-up visit on August 3, 2015, it was noted that he had stopped smoking and was taking his medications and that he had been feeling well with no symptoms. (Tr. 385). At his next follow up visit on October 20, 2016, it was observed not only that Plaintiff had been out of medications for six months and had resumed smoking but also that he had improved when taking his medications and refraining from smoking. (Tr. 458-59).

Third, the ALJ reasonably considered inconsistencies between Plaintiff's testimony and the record.  (Tr. 17-19).  In his function report, Plaintiff stated that on a typical day he does nothing after he awakes other than take his medications, lie down, watch television, and go back to sleep.  (Tr. 292).  He stated that he requires assistance from others in order to use the toilet, bathe, shave, get dressed, and feed himself, and that his son and daughter-in-law provide such assistance.  *Id.*  He further stated that he needs a cane to walk, that he only leaves his house for doctor's appointments, that he never goes out alone, and that his medical condition prevents him from driving, cooking, or doing any chores around his house or yard.  (Tr. 294-95).  But as noted by the ALJ, Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were inconsistent with other evidence in the record.  (Tr. 18).  *See Crawford v. Colvin*, 809 F.3d 404, 410 (8th Cir. 2015) (noting that an ALJ may consider "inconsistencies" in assessing subjective complaints); *Rogers v. Astrue*, 479 F. App'x 22, 23 (8th Cir. 2012) (affirming the ALJ's decision and noting that the ALJ had discounted the plaintiff's subjective complaints based on inconsistent statements the plaintiff had made).

For example, at a consultative exam with Dr. F. Timothy Leonberger on March 15, 2016—a mere two weeks before the relevant period—Plaintiff reported that he was "capable of performing most activities of daily living, including cooking, shopping, doing laundry, and cleaning house."  (Tr. 425).  At that exam, he exhibited normal gait and motor movements.  *Id.* Additionally, at a consultative examination with Licensed Psychologist Alison Burner on February 27, 2017, Plaintiff reported that he was able to care for himself independently and that he shared household duties with his girlfriend.  (Tr. 485).  An ALJ "may decline to credit a claimant's subjective complaints 'if the evidence as a whole is inconsistent with the claimant's testimony,'" and the ALJ properly did so here.  *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016) (quoting *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006)).  *See also Igo v. Colvin*, 839 F.3d 724, 731 (8th Cir. 2016 ("The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.").

While a claimant "need not prove [ ]he is bedridden or completely helpless to be found disabled," *Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005) (internal quotation marks omitted), Plaintiff's daily activities can nonetheless be seen as inconsistent with his allegations of disability, and may be considered alongside other factors in assessing the severity of his symptoms.  *See Vance v. Berryhill*, 860 F.3d 1114, 1121 (8th Cir. 2017) (finding "[t]he

12

inconsistency between [the claimant's] subjective complaints and evidence regarding her activities of daily living" raised questions about the weight to give to her subjective complaints); Based on the foregoing, it was reasonable for the ALJ to conclude that Plaintiff's daily activities were not indicative of a disabling condition.

In sum, the Court finds that the ALJ conducted a proper analysis of Plaintiff's RFC.  The ALJ did not impermissibly "play doctor," but properly considered the objective evidence along with medical opinion evidence in coming to an RFC assessment.  The Court concludes that the RFC is supported by substantial evidence in the record.

**B.  Duty to Develop the Record**

Plaintiff also argues that the ALJ failed to fully and fairly develop the record. Specifically, he argues that the ALJ should have contacted his cardiologist, Dr. Siddiqui, to get clarification regarding the illegible records[4] he provided.  Instead, the ALJ relied on other information in the record to determine that the objective medical evidence did not support the extreme limitations imposed in Dr. Siddiqui's opinion regarding Plaintiff's physical limitations caused by his cardiovascular conditions.

Given the non-adversarial nature of social security hearings, ALJs have a duty to fully and fairly develop the record.  *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005).  This duty applies even in cases where the claimant is represented by counsel.  *Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995).  "The Commissioner and the claimant's attorney both share the goal of ensuring that deserving claimants who apply for benefits receive justice."  *Medley v. Berryhill*, 2019 WL 1115527, at *7 (E.D. Mo. Mar. 11, 2019) (citing *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)).  Failure to develop the record can be reversible error, but reversal is warranted only if the failure resulted in unfairness or prejudice to the plaintiff.  *Combs v. Astrue*, 243 Fed. App'x. 200, 204 (8th Cir. 2007).

Additionally, although the duty to develop the record may require an ALJ to seek additional medical records, the ALJ need not seek additional information unless a crucial issue is

---

[4]  As noted by the ALJ, Dr. Siddiqui's notes are often illegible or incomplete.  (Tr. 22, 684-706). The notes from each visit are only one page in length.  There is a fill-in-the-blank section at the top of each page, but he left the spaces for "General Appearance", "Cardiac", "Pulse", "Resp." and "Presenting Complaint" blank in the notes for each visit.  Dr. Siddiqui only consistently filled in the spaces for "Name," "Height" and "Weight".  There is a large blank space beneath this where Dr. Siddiqui made notes, which are sparse and provide little insight.  *Id*.

undeveloped.  *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).  So long as other evidence in the record provides a sufficient basis for his decision, the ALJ does not need to expand the record.  *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995); *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011) (The ALJ is required to develop the record "only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled.") (citing *Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986)).  Therefore, "[a]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision."  *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995).

In this case, the Court's review of the record confirms that no crucial issue was left undeveloped, and, as more fully discussed above, the ALJ's decision is supported by substantial evidence.  In his decision, the ALJ cited to ample evidence in the record that provides a sufficient basis for his findings, and he was under no obligation to contact Dr. Siddiqui for further information or clarification.

### C.  Weighing the Opinion of Plaintiff's Treating Cardiologist

Plaintiff's cardiologist, Dr. Siddiqui, treated Plaintiff between July 10, 2017, and September 15, 2018.  (Tr. 684-706).  Approximately six weeks after Plaintiff's administrative hearing before the ALJ, Dr. Siddiqui provided the ALJ with his opinion regarding Plaintiff's physical residual functioning capacity.  (Tr. 703-05).  Dr. Siddiqui stated that Plaintiff's symptoms include "tiredness", "short of breath" [sic], and chest pain, and that Plaintiff's prognosis was "poor."  (Tr. 703).  In the section asking Dr. Siddiqui to identify clinical findings and objective signs that support Plaintiff's limitations, he wrote "myocardial infarction" preceded by one illegible word, and "diabetes."  *Id*.  In a question asking whether Plaintiff's impairments are reasonably consistent with the symptoms and functional limitations described in the opinion, he rather oddly checked "No." (Tr. 704).  He opined that Plaintiff needs to elevate his legs to thirty degrees for twenty percent of every 8-hour working day.  (Tr. 705).  He stated that Plaintiff could sit or stand for only 30 minutes at a time, yet also inconsistently stated that Plaintiff did not need to get up and walk after sitting for a full hour, and did not require the ability to shift positions at will.  (Tr. 704).  Dr. Siddiqui left parts of the form blank, declining to indicate how many blocks Plaintiff could walk without rest and also failing to indicate the frequency and duration of his treating relationship with Plaintiff.  (Tr. 703-04).

14

The ALJ assigned "partial" weight to Dr. Siddiqui's opinion, finding it to be unsupported by either his own treatment notes or by the other medical evidence of record, as well as internally inconsistent.  (Tr. 22).

Plaintiff argues that under 20 C.F.R. § 404.1527(c),[5] the ALJ should have accorded "controlling weight," to the opinion of his treating physician, and the failure to do so constitutes reversible error.  He also asserts that the ALJ assigned "partial" weight to the opinion solely because parts of it were illegible, rather than clearly indicating whether he also found it unsupported by medical evidence in the record.

Under the regulations applicable to Plaintiff's claim, if the Social Security Administration finds that a treating source's medical opinion on the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record," the Social Security Administration will give that opinion "controlling weight."  20 C.F.R. § 404.1527(c)(2).  The reason for the rule is that treating physicians with a long treatment relationship with a claimant are expected to be able to provide a more detailed, longitudinal picture of the claimant's medical impairments.  *See* 20 C.F.R. § 404.1527(c)(2).

However, "[a] treating physician's opinion does not automatically control, since the record must be evaluated as a whole."  *Bentley v. Shalala*, 52 F.3d 784, 786 (8th Cir. 1995).  "An ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions."  *Skelton v. Colvin*, 2016 WL 320129, at *8 (E.D. Mo. Jan. 26, 2016) (quoting *Goff*, 421 F.3d at 790); *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010).  The Commissioner may also assign "little weight" to a treating physician's opinion when it is either internally inconsistent or conclusory. *Chesser v. Berryhill*, 858 F.3d 1161, 1164–65 (8th Cir. 2017).

Where the ALJ does not give a treating physician's opinion controlling weight, the ALJ evaluates the opinion based on several factors, including the consistency of the opinion with the record as a whole, the length of the treatment relationship and the frequency of examination, the

---

[5]  These regulations apply to claims filed before March 27, 2017, including the claim at issue in this case.  For claims filed after March 27, 2017, the rule that a treating source opinion is entitled to controlling weight has been eliminated.  *See* 20 C.F.R. § 404.1520c.

nature and extent of the treatment relationship, the evidence provided by the source in support of the opinion, and the level of specialization of the source.  20 C.F.R. § 404.1527(c)(2)-(6).  In weighing a treating source opinion, it is the ALJ's role to resolve conflicts in the evidence, and the ALJ's finding should not be disturbed so long as it falls within the "available zone of choice."  *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011).

In evaluating Dr. Siddiqui's opinion, the ALJ stated:

> Jawed Siddiqui M.D. offered opinions as a treating source in cardiology. His statement is partly illegible. . . Dr. Siddiqui's opinions are given partial weight.  Dr. Siddiqui's opinions are difficult to reconcile with his treatment notes, which are nearly illegible and offer little insight into objective findings in physical or cardiac examinations.  Further, the opinions offered are internally inconsistent.  For example, he stated the claimant could sit for only 30 minutes at a time and for a total of less than two hours per day.  However, he stated the claimant does not need to get up from sitting for more than 60 minutes to stand and walk for 15 minutes at a time.  He also stated that he would need an unscheduled break every two hours, which can be accommodated with normal work breaks. Further, Dr. Siddiqui stated the claimant needed to elevate his feet. However, there is nothing within the medical evidence to support a need to elevate the feet during the work day.  There is no documentation in any treatment file, emergency room visit, or in Dr. Siddiqui's own notes that indicates a need to elevate his feet as suggested.

(Tr. 22).  After careful review of the record, the Court finds that the ALJ gave good reasons, supported by substantial evidence, for discounting Dr. Siddiqui's opinion, and that his finding falls within the available "zone of choice."  *See Buckner*, 646 F.3d at 556.

At the outset, the Court notes that Plaintiff's assertion that the ALJ failed to indicate whether he gave partial weight to Dr. Siddiqui's opinion because it was not well supported by medical evidence in the record is simply not accurate.  The ALJ plainly stated that one of the reasons he discounted the opinion was a lack of support for it in medical evidence in the record as a whole.  The ALJ reasonably found that certain limitations in physical functioning found in Dr. Siddiqui's opinion were not supported by either his treatment notes or the larger record.  Dr. Siddiqui's treatment notes contain few objective findings or observations that would support the opinions offered.  Indeed, his treatment notes are quite sparse and consist mainly of fill-in-the-blank sections that are largely left blank, as well as notes that, when legible, appear to consist largely of a written list of prescription medications.  For example, some of the words that are

clear enough to read include "Viagra" and "Keflex" (Tr. 690), "Metformin" (Tr. 689), "Augmentin" (Tr. 685), "Triple Ointment" (Tr. 684), and "Doxycycline" (Tr. 693).

Discounting the opinion for lack of support in the record is proper, as a medical source opinion that is inconsistent with the objective medical evidence cannot be afforded controlling weight.  "[A]n ALJ may discount a treating source opinion that is unsupported by treatment notes."  *Aguiniga v. Colvin*, 833 F.3d 896, 902 (8th Cir. 2016).  *See* also 20 C.F.R. § 404.1527(c)(2) (to be afforded controlling weight, a medical opinion must be consistent with the record as a whole, and must be supported by the objective medical evidence); 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion.").

Additionally, Dr. Siddiqui's opinion itself was sparse, lacking in detail, and consisted of vague written statements, fill-in-the-blank answers, and incomplete or inconsistent information. (Tr. 703-05).  RFC opinions that "consist of nothing more than vague, conclusory statements— checked boxes, circled answers, and brief fill-in-the-blank responses, . . . cite[ ] no medical evidence and provide little to no elaboration . . . possess 'little evidentiary value.'"  *Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018) (quoting *Toland v. Colvin*, 761 F.3d 931, 937 (8th Cir. 2014)).  Thus, the ALJ did not err in giving Dr. Siddiqui's RFC assessment only partial weight and relying equally on other opinions in the record.  *See Toland*, 761 F.3d. at 935-37.

Furthermore, in assigning partial weight to Dr. Siddiqui's opinion, the ALJ reasonably concluded that it was internally inconsistent.  The Commissioner may assign "little weight" to a treating physician's opinion when it is internally inconsistent.  *Chesser v. Berryhill*, 858 F.3d 1161, 1164-65 (8th Cir. 2017).  Good reasons exist for assigning lesser weight to the opinion of a treating source where "the treating physician's opinions are themselves inconsistent."  *Cruze v. Chater*, 85 F.3d 1320, 1325 (8th Cir. 1996).  *See also Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000) (internal inconsistency and conflict with other evidence on the record constitute good reasons to assign lesser weight to a treating physician's opinion).

Additionally, the ALJ did not err in finding that Dr. Siddiqui's opinions were inconsistent with the record as a whole.  The ALJ reasonably considered that the objective medical evidence did not support the restrictive conditions indicated by Dr. Siddiqui.  (Tr. 17-23).  The Court has already discussed at length how the record failed to support the functional limitations imposed by

Dr. Siddiqui and will not revisit that discussion in detail here, except to note that the ALJ properly considered the often normal and unremarkable physical findings, including normal heart rate, normal gait, and lack of edema.  (Tr. 18-19); *Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008) (mild or normal objective findings undermine allegations of disability).

In sum, the Court finds that the ALJ gave good reasons, supported by substantial evidence, for discounting the opinion of Dr. Siddiqui.  Although the ALJ did not explicitly discuss all of the factors listed in § 404.1527(c) in evaluating Dr. Siddiqui's opinion, he was not required to do so.  *See Nishke v. Astrue*, 878 F.Supp.2d 958, 984 (E.D. Mo. 2012) (ALJ's failure to perform a factor-by-factor analysis was not erroneous where the ALJ "explained his rationale in a manner that allows the [court] to follow his line of reasoning, including stating the amount of weight given to this evidence"); *Derda v. Astrue*, 2011 WL 1304909, at *10 (E.D. Mo. Mar. 30, 2011) (ALJ need not explicitly address each of the factors).  The ALJ discussed some of the factors in his decision, including the inconsistency of Dr. Siddiqui's opinion with his own treatment notes and other evidence.  He also "explained his rationale in a manner that allows the [Court] to follow his line of reasoning."  *Nishke*, 878 F.Supp.2d at 984.  No more was required.

The Court acknowledges that the record contains conflicting evidence, and the ALJ could have reached a different conclusion with regard to Dr. Siddiqui's opinion.  But "it is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians." *Renstrom*, 680 F.3d at 1065 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)).  This Court's task is not to reweigh the evidence presented to the ALJ.  The ALJ's weighing of the evidence here fell within the available "zone of choice," and the Court cannot disturb that decision merely because it might have reached a different conclusion.  *See Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011).

## VI.   CONCLUSION

Having reviewed the entire record, the Court finds that the ALJ properly considered and weighed the medical opinion evidence in the record.  The Court also finds that the ALJ considered the medical evidence as a whole and made a proper RFC determination based on a fully and fairly developed record.  Consequently, for all of the foregoing reasons, the Court determines that the ALJ's decision is supported by substantial evidence.

Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**.


Dated this 29th day of March, 2021.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE